UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.                                              **DECISION AND ORDER**
                                                 10-CR-90S (3)
                                                 12-CR-375S
JAMES F. LAGONA,

           Defendant.

## I. INTRODUCTION

Defendant James F. Lagona stands convicted in two separate cases in this district. First, on February 23, 2011, after an 11-day trial, a jury returned a guilty verdict against Lagona on 26 counts of mail fraud and aiding and abetting mail fraud, in violation of 18 U.S.C. §§ 2, 1341; and one count of conspiracy to commit mail fraud, in violation of 18 U.S.C. § 1349 (10-CR-90S, the "mail fraud case"). (10-CR-90S, Docket Nos. 76, 81.) Second, on December 18, 2012, Lagona pleaded guilty to attempted obstruction of the due administration of justice, in violation of 18 U.S.C. § 1503 (a) (12-CR-375S, the "obstruction case"). (12-CR-375S, Docket Nos. 11, 12.)

Lagona filed post-trial motions for judgment of acquittal or a new trial in the mail fraud case, which this Court denied, see United States v. Gent, No. 10-CR-90S, 2012 WL 1899159 (W.D.N.Y. May 23, 2012), aff'd sub nom. Gane v. United States, 592 F. App'x 4 (2d Cir. 2014), but did not file post-plea motions in the obstruction case. The mail fraud and obstruction cases were then joined for sentencing. On March 20, 2013, this Court sentenced Lagona to 9 years' imprisonment on the mail fraud counts (to run concurrent), 1 year of imprisonment on the conspiracy count (to run consecutive), and 1 additional

1

year of imprisonment (to run consecutive) on the obstruction case. (10-CR-90S, Docket No. 218; 12-CR-375S, Docket No. 16.)

Thereafter, Lagona appealed both cases to the United States Court of Appeals for the Second Circuit, which, on October 24, 2014, denied Lagona's appeals in a consolidated summary order. See Gane v. United States, 592 Fed.App'x 4 (2d Cir. 2014).

Now before this Court is Lagona's combined motion[1] under Rules 11 and 33 of the Federal Rules of Criminal Procedure to withdraw his guilty plea in the obstruction case and for a new trial in the mail fraud case, both based on newly discovered evidence.[2] The government opposes the motion. With briefing fully completed and oral argument deemed unnecessary, this Court will deny Lagona's motion.

## II. NEWLY DISCOVERED EVIDENCE

The newly discovered evidence relates to a discussion that Lagona allegedly had with a counselor while he was detained at the Buffalo Federal Detention Facility. (Affirmation of James F. Lagona ("Lagona Aff."), Docket No. 259-1, ¶ 14.) According to Lagona, this counselor—Gena Ligonde—advised him that he was "suffering from severe anxiety and depression, as well as post-traumatic stress disorder." (Id.) Ligonde allegedly traced these conditions to Lagona's wife's troubled pregnancy, the premature birth of his daughter (some 27 years ago), and the constant stress of caring for his

---

1 Lagona filed his motion at Docket No. 259 in 10-CR-90S. The caption of his motion lists both 10-CR-90S and 12-CR-375S, but presumably by oversight, Lagona's motion was never filed in 12-CR-375S. The government's response, however, was filed in both cases. (10-CR-90S, Docket No. 264; 12-CR-375S, Docket No. 30.) For record purposes, the Clerk of Court will be directed to file Lagona's motion *nunc pro tunc* to February 25, 2014 in 12-CR-375S.

2 As will be discussed, Lagona also seeks the appointment of counsel, the issuance of subpoenas, and release from custody.

disabled wife and handicapped daughter. (Id.)

Lagona further claims that Ligonde told him that he "subconsciously developed two separate coping mechanisms over the years, disassociation and compartmentalization." (Id. at ¶ 16.) These two coping mechanisms allegedly caused Lagona "to distance himself from anything that would distract [him] from caring for [his] disabled wife and handicapped daughter, and to subconsciously push those matters aside so that [he] could function on a daily basis." (Id.)

The import of this evidence, according to Lagona, is that it explains why he "had no awareness" of co-defendant Guy Gane's illegal conduct in the mail fraud case. (Id. at ¶ 17.) Lagona also claims that these newly discovered conditions, along with the trial and verdict in the mail fraud case and the subsequent suicide of a close friend, "led to the obstruction matter," in the sense that "it all became far too much for [him]." (Id. at ¶ 18.) Lagona claims that Ligonde told him that his newly discovered conditions "clearly explained [his] actions and behaviors in both matters." (Id. at ¶ 19.)

Based on this newly discovered evidence, Lagona seeks (1) to withdraw his guilty plea in the obstruction case, (2) to receive a new trial in the mail fraud case, (3) to have this Court issue subpoenas to obtain Ligonde's records and testimony, (4) to have counsel appointed, and (5) to be released from custody. (Id. at ¶¶ 3, 5, 24, 25, 26.)

### III. DISCUSSION

**A. Withdrawal of a Plea under Rule 11**

Rule 11 provides that in a case such as this where a court imposes sentence, "the defendant may not withdraw a plea of guilty or nolo contendre, and the plea may be set aside only on direct appeal or collateral attack." Fed. R. Crim. P. 11 (e). Lagona did

3

not seek to set aside his guilty plea on direct appeal. (12-CR-375S, Docket 20 (appealing the sentence only).) He has, however, filed a collateral attack to set aside his conviction and sentence in the obstruction case. (12-CR-375S, Docket No. 31.) That motion remains pending. Accordingly, because Rule 11 does not provide an avenue for Lagona to withdraw his guilty plea under these circumstances, his request to do so is denied.

**B.    New Trial under Rule 33**

Rule 33 authorizes the court to "vacate any judgment and grant a new trial if the interest of justice so requires." Eberhart v. United States, 546 U.S. 12, 13, 126 S. Ct. 403, 403, 163 L. Ed. 2d 14 (2005) (per curiam). A new trial based on newly discovered evidence is granted "only upon a showing that the evidence could not with due diligence have been discovered before or during trial, that the evidence is material, not cumulative, and that admission of the evidence would probably lead to an acquittal." United States v. Alessi, 638 F.2d 466, 479 (2d Cir. 1980). It must also be shown that the new evidence would be admissible at trial. See United States v. Parker, 903 F.2d 91, 103 (2d Cir. 1990).

To meet this standard, the defendant must satisfy five elements: (1) demonstration that the evidence is newly discovered after trial; (2) assertions of fact from which the court can infer due diligence by defendant in attempting to obtain the evidence; (3) materiality of the new evidence; (4) demonstration that the new evidence is not merely cumulative or impeaching; and (5) demonstration that the new evidence would likely result in an acquittal. See United States v. Owen, 500 F.3d 83, 88 (2d Cir. 2007) (collecting cases); see also United States v. Forbes, 790 F.3d 403, 406-07 (2d Cir. 2015).

4

"In evaluating a Rule 33 motion based on newly discovered evidence, a court must 'exercise great caution' and order a new trial 'only in the most extraordinary circumstances.'" United States v. Collins, No. 07 Cr. 1170, 2010 WL 743178, at *1 (S.D.N.Y. Mar. 3, 2010) (quoting United States v. Zagari, 111 F.3d 307, 322 (2d Cir. 1997), in turn quoting, United States v. Spencer, 4 F.3d 115, 118 (2d Cir. 1993)), rev'd on other grounds, 665 F.3d 454 (2d Cir. 2012). "The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be manifest injustice." United States v. Ferguson, 246 F.3d 129, 134 (2d Cir. 2001); see also United States v. Lin Guang, 511 F.3d 110, 119 (2d Cir. 2007) ("For a trial judge to grant a Rule 33 motion, he must harbor a real concern that an innocent person may have been convicted.") (internal quotation marks omitted).

Here, Lagona fails to demonstrate extraordinary circumstances warranting a new trial or that letting the verdict stand would constitute manifest injustice. Even assuming that Ligonde's "diagnosis" constitutes new admissible and material evidence that Lagona could not have diligently discovered, it is not of the sort that would change the verdict. See United States v. Gambino, 59 F.3d 353, 364 (2d Cir. 1995) ("newly discovered evidence must be of a sort that could, if believed, change the verdict"). Lagona claims that the effects of his coping mechanisms "clearly explains" why he had "no awareness of what Guy W. Gane, Jr. was doing with his clients' investment funds and what he was doing with his business," and that it further explains his "actions and behaviors." (Lagona Aff., ¶¶ 17, 19.)

But the evidence supporting Lagona's "awareness" of Gane's illegal conduct and the scheme to defraud was overwhelming at trial, as thoroughly set forth and explained

5

in this Court's decision denying Lagona's post-trial motions. See Gent, 2012 WL 1899159, at *5-9. The evidence demonstrated, for example, that Lagona knowingly participated in the charged scheme to defraud:

> Lagona was hired in 2005 to work for Watermark, prior to the sale of the first debenture in January 2006, and Gane informed him that the incoming funds would be used for salaries and expenses. Tr. 67–68, 96. Lagona prepared all debentures, Tr. 92–93, those initial debentures became due in January 2007, and Gane testified that Lagona was aware that no investments had been made, the investment funds had otherwise been spent, and new investment funds were being used to pay off the amounts owed. Tr. 84–90, 92–94 96–97; see Gov't Exs. 4.02, 4.03. Lagona nonetheless continued to prepare debentures. Tr. 92–93, 96–97. Gane further testified that shortly after Gent started his employment in the "middle of March, I believe, of 2007," Gane discussed with Gent and Lagona the use of new investor money to pay old investors. Tr. 102, 108. According to Gane, when he suggested that they contact the authorities, referencing the SEC and the National Association of Security Dealers ("NASD," subsequently named Financial Industry Regulatory Authority or "FINRA"), regarding the inability to repay investors, both Gent and Lagona told him that he was crazy. Tr. 108–109, 824, 835. Gent responded that there were different ways to fix this problem than to go to the authorities. Tr. 109. Both Lagona and Gent were also present when Gane asked bookkeeper Jane Furlani to take home financial records in late December 2007 or early January 2008 because FINRA or the SEC would want to review them. Tr. 773, 775–776.
>
> . . .
>
> The jury heard evidence that, in addition to preparing the debentures, Tr. 92–94, Altadonna Dep. at 29–30, Lagona tracked or tallied the money coming in from the sale thereof, Tr. 94, 843–845, and, according to one salesperson, explained the debentures to the salespeople. Altadonna Dep. at 132. Further, contrary to his contention, there was sufficient evidence that Lagona signed and sent the response letters to clients following PENSCO's devaluing of investments with Watermark. Tr. 180–188, 651–655, 674–675, 1430–1432. These letters from Lagona on behalf of 'WaterMark M–One'

6

> state that investments had retained value and continued to accrue 10% per year. Tr. 186; Gov't Exs. 5.02, 11.02, 17.01, 22.02. There was evidence that Lagona specifically discussed with Gane the fact that these letters should indicate "[t]hat the customer's full value of their account was on the books at Watermark M–One." Tr. 651–652. Gent also participated in discussions regarding the need for these letters with Lagona before they were sent. Tr. 182–183, 651–652. As noted, Gane, Gent, and Lagona were aware at that time of the lack of either assets or investments to support these assertions, therefore Watermark's records could not have shown that the investments had retained full value plus interest. Tr. 183, 187–188, 898–900.

Gent, 2012 WL 1899159, at *5, *6.

In affirming Lagona's convictions, the Second Circuit confirmed Lagona's "awareness" of and intimate involvement in the scheme:

> Lagona actively prepared new debentures even after becoming aware that payments to investors of previously issued debentures were due and could not be paid, as promised, with profit; attended at least one sales meeting in which he participated in procuring an investment based on false representations; signed letters assuring investors that their non-existent investments were safe; and did these things at times when he was aware that no investments and no income were being generated.

Gane, 592 F. App'x at *6.

In the face of this overwhelming evidence, it cannot reasonably be concluded that the jury would have acquitted Lagona if it was presented with the new evidence that he now tenders. Lagona has therefore failed to demonstrate a "most extraordinary circumstance" warranting a new trial. United States v. Imran, 964 F.2d 1313, 1318 (2d Cir. 1992) (quoting United States v. Di Paolo, 835 F.2d 46, 49 (2d Cir. 1987)). He has also necessarily failed to demonstrate that letting his guilty verdict stand would be manifest injustice. See Ferguson, 246 F.3d at 134. His motion for a new trial—and his

dependent requests for the appointment of counsel, for the issuance of subpoenas, and for release—must therefore be denied.

## IV. CONCLUSION

Lagona has not established that he is entitled to a new trial based on newly discovered evidence. His motion seeking such relief, as well as his dependent requests for relief, are therefore denied.

## V. ORDER

IT HEREBY IS ORDERED, that Lagona's Motion for a New Trial (10-CR-90S, Docket No. 259) is DENIED.

FURTHER, that Lagona's Motion to Withdraw Guilty Plea (12-CR-375S) is DENIED.

FURTHER, that the Clerk of Court is directed to file the document at Docket No. 259 in 10-CR-90S as a Motion to Withdraw Guilty Plea in 12-CR-375, *nunc pro tunc* to February 25, 2014.

SO ORDERED.


Dated: May 11, 2018
       Buffalo, New York

                                          /s/William M. Skretny
                                          WILLIAM M. SKRETNY
                                        United States District Judge