UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JAMES F. LAGONA,

                         Petitioner,

     v.

UNITED STATES OF AMERICA,

                       Respondent.

**DECISION AND ORDER**
16-CV-427S
10-CR-90S (3)

# I. INTRODUCTION

Presently before this Court is pro se[1] petitioner James F. Lagona's Motion to Vacate, Set Aside, or Correct his Sentence under 28 U.S.C. § 2255. (Docket No. 302.[2]) For the reasons discussed below, Lagona's motion is denied.

# II. BACKGROUND

On February 23, 2011, after an 11-day trial, a jury returned a guilty verdict against Lagona on 26 counts of mail fraud and aiding and abetting mail fraud, in violation of 18 U.S.C. §§ 2, 1341; and one count of conspiracy to commit mail fraud, in violation of 18 U.S.C. § 1349. (Docket Nos. 76, 81.)

Lagona and others were involved in a scheme to sell debentures under the names Watermark Financial Services Group and Watermark M-One Holdings, Inc. Beginning in January 2006, commissioned sales staff offered investment opportunities in one- or two-year debentures that promised 10% annual interest. Among other representations,

---

[1] Because Lagona is an attorney, he is not entitled to the special solicitude ordinarily afforded a pro se litigant. See Tracy v. Freshwater, 623 F.3d 90, 101-02 (2d Cir. 2010) (citing Holtz v. Rockefeller & Co., 258 F.3d 62, 82 n. 4 (2d Cir. 2001)).

[2] All docket citations are to the criminal case: 10-CR-90S (3).

investors were told that their investments would fund real estate development in Maine and a health insurance network for religious institutions. What individuals were not told, however, was that the "convertible debentures" they were purchasing were unsecured loans to the Watermark entities which, before the due date for repayment, could be converted into shares of common stock in the company. Individuals who testified at trial explained that, based on representations made to them, they believed they were making a safe, guaranteed investment with little to no risk. Between January 2006 and May 2008, this scheme realized $6,758,027, but only $241,000 was actually invested, and only $545,064 in principal and interest was returned to investors.[3]

On March 20, 2013, this Court sentenced Lagona to 9 years' imprisonment on the mail fraud counts (to run concurrent) and 1 year of imprisonment on the conspiracy count (to run consecutive).[4] (Docket No. 218.)

Lagona appealed his conviction and sentence to the United States Court of Appeals for the Second Circuit, which, on October 24, 2014, denied the appeal in a consolidated summary order. See Gane v. United States, 592 Fed.App'x 4 (2d Cir. 2014). The Second Circuit rejected Lagona's arguments (1) that there was insufficient evidence presented at trial that he intended to defraud or knew about the scheme, (2) that there was an unacceptable risk that speculative legal theories led to his convictions, (3) that this Court admitted impermissible hearsay evidence, (4) that this Court erroneously instructed the jury, and (5) that his sentence was procedurally and substantively

---

[3] A broader factual discussion, complete with citations to the trial transcript and evidence, is contained in this Court's decision resolving Lagona's post-trial motions. See United States v. Gent, No. 10-CR-90S, 2012 WL 1899159 (W.D.N.Y. May 23, 2012).

[4] Lagona received an additional 1-year consecutive sentence for his conviction in a separate case for attempted obstruction of the due administration of justice, in violation of 18 U.S.C. § 1503 (a), for a total sentence of 11 years. (See 12-CR-375S). The two cases were joined for sentencing.

unreasonable.  See id. at *1-8.  The Second Circuit consequently affirmed Lagona's

conviction and sentence.  See id. at *8.

The United States Supreme Court denied Lagona's petition for writ of certiorari on

June 8, 2015.  See Lagona v. United States, 135 S. Ct. 2828, 192 L. Ed. 2d 864 (2015).

Less than one year later, on May 27, 2016, Lagona timely filed the instant § 2255 motion,[5]

which the government opposes.[6]  (Docket Nos. 302, 307, 310, 335.)

## III. DISCUSSION

### A.     § 2255 Proceedings

Twenty-eight U.S.C. § 2255 allows federal prisoners to challenge the legality of

their sentences.  That section provides, in pertinent part, that:

> A prisoner in custody under sentence of a court established by Act of
> Congress claiming the right to be released upon the ground that the
> sentence was imposed in violation of the Constitution or laws of the United
> States, or that the court was without jurisdiction to impose such sentence,
> or that the sentence was in excess of the maximum authorized by law, or is
> otherwise subject to collateral attack, may move the court which imposed
> the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255 (a).

Importantly, a § 2255 motion is not a substitute for an appeal.  See Bousley v.

United States, 523 U.S. 614, 621, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998) ("Habeas

review is an extraordinary remedy and 'will not be allowed to do service for an appeal.'")

(quoting Reed v. Farley, 512 U.S. 339, 354, 114 S. Ct. 2291, 2300, 129 L. Ed. 2d 277

(1994)).  Relief under § 2255 is therefore narrowly limited, with collateral attack on a final

---

[5] A 1-year statute of limitations applies to § 2255 petitions.  See 28 U.S.C. § 2255 (f).

[6] Lagona's motion includes requests for a hearing, appointment of counsel, immediate release, vacatur of the jury's verdict, and re-sentencing to time served based on the government's purported initial plea offer. (Docket No. 302.)

criminal judgment available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in complete miscarriage of justice." Graziano v. United States, 83 F.3d 587, 589-90 (2d Cir. 1996) (per curiam) (quoting United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995) (internal quotation marks omitted)).  This narrow limitation preserves respect for finality, allows for the efficient allocation of judicial resources, and recognizes an aversion to retrying issues long after they occur.  See Bokun, 73 F.3d at 12 (citations omitted).

To shape the narrow relief available under § 2255, two procedural rules apply to make it more difficult for a defendant to upset a final criminal judgment on collateral review.  See Yick Man Mui v. United States, 614 F.3d 50, 53 (2d Cir. 2010).  First, the "mandate rule" bars re-litigation of issues already decided on direct appeal.  See id.; see also Burrell v. United States, 467 F.3d 160, 165 (2d Cir. 2006); United States v. Perez, 129 F.3d 255, 260 (2d Cir. 1997) ("[I]t is well-established that issues decided on direct appeal may not be re-litigated in the context of a petition under § 2255.")  This includes "not only . . . matters expressly decided by the appellate court, but also . . . re-litigation of issues impliedly resolved by the appellate court's mandate." Yick Man Mui, 614 F.3d at 53 (citing United States v. Ben Zvi, 242 F.3d 89, 95 (2d Cir. 2001)).  This rule also bars ineffective-assistance-of-counsel claims that were raised and resolved on direct appeal, as well as those involving factual predicates that while not explicitly raised on direct appeal, were impliedly rejected by the appellate court mandate.  See id. at 53-54 (citations omitted).  An exception to this rule exists for cases involving intervening changes in the law, in which case the petitioner "must show that there is new law which, when applied to

their claims, would result in a different disposition." Chin v. United States, 622 F.2d 1090, 1092 (2d Cir. 1980) ("Reconsideration [of claims previously raised on direct appeal] is permitted only where there has been an intervening change in the law and the new law would have exonerated a defendant had it been in force before the conviction was affirmed on direct appeal.") (citing United States v. Loschiavo, 531 F.2d 659, 664 (2d Cir. 1976)).

Second, the "procedural default" rule bars the collateral review of claims that could have been raised on direct appeal, unless the petitioner shows cause for failing to raise the claims on direct review and actual "prejudice" or actual innocence. See Bousley, 523 U.S. at 622-23 (citations omitted); see also Marone v. United States, 10 F.3d 65, 67 (2d Cir. 1993) ("In order to raise a claim that could have been raised on direct appeal, a § 2255 petitioner must show cause for failing to raise the claim at the appropriate time and prejudice from the alleged error.") This rule does not apply to ineffective-assistance-of-counsel claims, which may be brought in a § 2255 motion regardless of whether they could have been raised, or were raised, on direct appeal. See Massaro v. United States, 538 U.S. 500, 508-09, 123 S. Ct. 1690, 1696, 155 L. Ed. 2d 714 (2003).

Discovery in § 2255 proceedings is governed by Rule 6 of the Rules Governing Section 2255 Proceedings for the United States District Courts. Leave of court is required to engage in discovery, which may be granted for good cause. See Rule 6 (a). Such discovery is conducted under the Federal Rules of Criminal or Civil Procedure, or "in accordance with the practices and principles of law."[7] Id. The party requesting discovery must provide reasons for the request, which must "include any proposed interrogatories

---

[7] "If necessary for effective discovery, the judge must appoint an attorney for a moving party who qualifies to have counsel appointed under 18 U.S.C. § 3006A." Rule 6 (a).

and requests for admission, and must specify any requested documents." Rule 6 (b).

A petitioner may also be entitled to an evidentiary hearing. Section 2255 provides that a court shall hold an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." To determine whether a hearing is necessary, the court "must review the answer, any transcripts and records of prior proceedings, and any [additional materials submitted by the parties]." Rule 8 (a). If a hearing is necessary, the court must appoint an attorney to any moving party who qualifies for the appointment of counsel under 18 U.S.C. § 3006A. See Rule 8 (c). A hearing is generally warranted only where the petitioner establishes a plausible claim. See Puglisi v. United States, 586 F.3d 209, 213 (2d Cir. 2009).

The Second Circuit has further described the standard for holding a § 2255 evidentiary hearing as follows:

> In ruling on a motion under § 2255, the district court is required to hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255; see, e.g., Pham v. United States, 317 F.3d 178, 185 (2d Cir. 2003) (§ 2255 does not permit summary dismissals of motions that present facially valid claims). However, the filing of a motion pursuant to § 2255 does not automatically entitle the movant to a hearing; that section does not imply that there must be a hearing where the allegations are "vague, conclusory, or palpably incredible." Machibroda v. United States, 368 U.S. 487, 495, 82 S. Ct. 510, 7 L. Ed. 2d 473 (1962); see, e.g., Chang v. United States, 250 F.3d 79, 85 (2d Cir. 2001). To warrant a hearing, the motion must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle him to relief. See, e.g., Machibroda, 368 U.S at 494, 82 S. Ct. 510; United States v. Aiello, 814 F.2d 109, 113-14 (2d Cir. 1987).

Gonzalez v. United States, 722 F.3d 118, 130-31 (2d Cir. 2013).

The petitioner bears the burden of proving entitlement to relief under § 2255 by a

preponderance of the evidence. See Galviz Zapata v. United States, 431 F.3d 395, 399 (2d Cir. 2005) (citing Williams v. United States, 481 F.2d 339, 346 (2d Cir. 1973)); see also Triana v. United States, 205 F.3d 36, 30 (2d Cir. 2000).

## B.    Lagona's Claims

Lagona asserts two grounds in his petition: (1) ineffective assistance of trial counsel (id. at ¶¶ 10-63); and (2) "movant's state of mind at the time of the alleged crimes and during the trial is in question," which this Court interprets as challenging the sufficiency of the evidence of Lagona's intent (Docket No. 302, ¶¶ 64, 65). These claims are addressed below.

### 1.    Lagona's ineffective-assistance-of-counsel claims fail.

Lagona maintains that his trial counsel was ineffective. He claims that trial counsel (1) failed to meet with and interview certain witnesses (Docket No. 302, ¶¶ 12-14); (2) failed to file a motion in limine to preclude reference to or evidence of his religion or religious practices (id. at ¶¶ 15-16); (3) failed to properly handle evidence concerning Konstantinos "Kostas" Samouilidis (id. at ¶¶ 17-23); (4) failed to investigate Guy Gane's background (id. at ¶¶ 24-30); (5) failed to investigate or secure documents relating to his daughter's hospitalization (id. at ¶¶ 31-33); and (6) failed to advise him of the government's plea offer (id. at ¶¶ 34-38).

The Sixth Amendment provides, in pertinent part, that "[i]n all criminal prosecutions, the accused shall . . . have the Assistance of Counsel for his defence." U.S. CONST. amend VI. It is well established that "the right to counsel is the right to the effective assistance of counsel." Eze v. Senkowski, 321 F.3d 110, 124 (2d Cir. 2003) (quoting McMann v. Richardson, 397 U.S. 759, 771 n.14, 90 S. Ct. 1441, 25 L. Ed. 2d

763 (1970)).

Lagona's ineffective-assistance-of-counsel claims may be brought in this collateral proceeding under § 2255 regardless of whether they could have been raised, or were raised, on direct appeal.[8]  See Massaro, 538 U.S. at 508-09.  To succeed on his ineffective-assistance-of-counsel claims and to secure reversal of his conviction on the ground of inadequate legal representation, Lagona must satisfy both prongs of the two-part test from Strickland v. Washington: (1) that his counsel's performance "fell below an objective standard of reasonableness;" and (2) that "the deficient performance prejudiced" him.  466 U.S. 668, 687-88, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

To satisfy the first prong of the Strickland test, Lagona must establish that his counsel's conduct fell below "an objective standard of reasonableness" under "prevailing professional norms" such that it was "outside the wide range of professionally competent assistance."  Id. at 688, 690.  Under this prong, the court "must 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance' and be watchful 'to eliminate the distorting effects of hindsight.'"  Aparicio v. Artuz, 269 F.3d 78, 95 (2d Cir. 2001) (quoting Strickland, 466 U.S. at 689).  This is because "[t]here are countless ways to provide effective assistance in any given case" and "[e]ven the best criminal defense attorneys would not defend a particular client in the same way."  Strickland, 466 U.S. at 689 (internal citation omitted).  The question is

---

[8] As noted above, however, the mandate rule still applies.  That is, ineffective-assistance-of-counsel claims that were raised and resolved on direct appeal, and any claims involving factual predicates that were impliedly rejected on direct appeal, are barred.  See Yick Man Mui, 614 F.3d at 53-54 (citations omitted).  Here, the Second Circuit did not address Lagona's ineffective-assistance-of-counsel claims on direct review.  See Gane v. United States, 592 Fed.Appx. 4 (2d Cir. 2014) "(Finally, "[i]n light of our baseline aversion to resolving ineffectiveness claims on direct review, . . . we decline to review" any claim of ineffective assistance to the extent presented on this appeal.") (quoting United Sates v. Morris, 350 F.3d 32, 39 (2d Cir. 2003)).

ultimately "whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." Harrington v. Richter, 562 U.S. 86, 105, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011).

To satisfy the second prong of the Strickland test, Lagona must establish that his attorney's "deficient performance prejudiced the defense" such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." See Strickland, 466 U.S. at 687, 694. The Second Circuit normally "requires some objective evidence other than defendant's assertions to establish prejudice," Pham v. United States, 317 F.3d 182, 182 (2d Cir. 2003), because "not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding," Strickland, 466 U.S. at 693. Counsel's errors must have been "so serious as to deprive the defendant of a fair trial." Id. at 687.

Because both parts of the Strickland test must be satisfied for a petitioner to establish ineffective assistance of counsel, failure to satisfy one part of the test frees a district court from assessing whether the petitioner satisfied the other part of the test. Strickland, 466 U.S. at 697 (noting that a court need not "address both components of the [two-part Strickland] inquiry if the defendant makes an insufficient showing on one"); see also Stouse v. Leonardo, 928 F.2d 548, 556 (2d Cir. 1991).

Each of Lagona's ineffective-assistance-of-counsel claims fails to meet the Strickland test.

### a. Trial counsel's failure to meet with, interview, and call certain witnesses does not constitute ineffective assistance of counsel.

Lagona claims that trial counsel was ineffective for failing to meet with, interview,

and call witnesses from St. Leo the Great Roman Catholic Church and potential witness Konstantinos "Kostas" Samouilidis. (Docket No. 302, ¶¶ 12-14, 17-23.)

As to the St. Leo witnesses, Lagona claims that trial counsel was ineffective for failing to investigate Msgr. Fischer and members of the Board of Trustees of the church as possible witnesses. (Id. at ¶ 12.) According to Lagona, these individuals were present at a meeting concerning the possible investment in a debenture and "their testimony concerning [Lagona's] presence and participation in that meeting would have been far different from the testimony of Defendant Gane and Thomas Brick, both of whom had good reason to misrepresent the involvement with and participation in the said meeting." (Id.) Lagona further maintains that had the jury been presented with these witnesses, it "in all likelihood would not have concluded that [Lagona] had knowledge of Defendant Gane's scheme." (Id. at ¶ 13.) Lagona claims that the prejudice is particularly severe because Msgr. Fischer is now deceased. (Id. at ¶ 14.)

As to Konstantinos "Kostas" Samouilidis, Lagona argues that trial counsel was ineffective for not pursuing Samouilidis as a witness and for stipulating to a certain piece of evidence. (Id. at ¶ 17.) At trial, Samouilidis was identified as a potential investor in Watermark. Lagona maintains that he saw a bank statement from Samouilidis's London bank that reflected a balance of several million dollars available for investment. (Id. at ¶ 17.) The government allegedly seized this statement when it executed search warrants at the Watermark offices, but it never produced the document to Lagona or introduced it at trial. (Id.) Instead, the government offered a bank statement from Samouilidis's Athens bank, which showed insufficient funds for investment. (Id. at ¶ 18.) But rather than challenge this evidence and seek the London statement, Lagona asserts that trial counsel

stipulated to the Athens statement against his wishes.  (Id. at ¶¶ 19, 21.)  This, according to Lagona, allowed the jury to infer that Samouilidis lacked sufficient funds to make the promised investment without challenge.  (Id. at ¶ 21.)

A court reviewing counsel's performance is "not permitted to use hindsight to second guess [counsel's] strategy choices."  Baran v. United States, 160 F. Supp. 3d 591, 596 (S.D.N.Y. 2016) (quoting Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994)).  And "the decision not to call a particular witness is typically a question of trial strategy that [reviewing] courts are ill-suited to second-guess."  Greiner v. Wells, 417 F.3d 305, 323 (2d Cir. 2005).  "[C]ounsel's decision as to whether to call specific witnesses—even ones that might offer exculpatory evidence—is ordinarily not viewed as a lapse in professional representation."  Id.  Moreover, counsel is not obligated to call every witness and pursue every issue or defense.  See United States v. FNU LNU, Nos. 06-CR-172-LTS, 13-CV-3507-LTS, 2015 WL 5178438, at *5 (S.D.N.Y. Sept. 4, 2015) ("Counsel's alleged decision not to call certain witnesses and investigate certain defenses . . . are afforded a presumption of reasonableness, which Petitioner's generalized assertions are insufficient to overcome."); Gilliam v. Artus, 653 F. Supp. 2d 315, 332-33 (W.D.N.Y. 2009) ("Although trial counsel has a duty to consult with a client regarding 'important decisions' . . . that obligation does not require counsel to obtain the defendant's consent to 'every tactical decision.'")

Here, Lagona complains that his trial counsel failed to pursue and present witnesses.  As to the St. Leo's witnesses, Lagona does not proffer their testimony nor explain how their testimony would have changed the outcome of the trial, other than to generally state that their testimony would have been "far different" than testimony

presented at trial and "in all likelihood" would have caused the jury to find that he lacked knowledge of Gane's illegal scheme. [9]   And as for the Samouilidis evidence, Lagona simply speculates that Samouilidis would have testified favorably to him, but he does not proffer what his testimony would have been, nor does he explain how he was prejudiced by his absence, other than to baldly state that the jury may have found that he possessed sufficient funds to invest.  But even assuming that were the case, Lagona fails to show that such a conclusion would have led to a different outcome.[10]

As this Court previously explained, there was overwhelming evidence of Lagona's knowledge of the scheme presented at trial separate and apart from a single meeting in a church or the existence of a London bank statement.  See Gent, 2012 WL 1899159, at *4-9.  The Second Circuit also found sufficient evidence of Lagona's knowledge without reliance on either alleged failure by counsel.   See Gane, 592 Fed.App'x at *6. Consequently, Lagona fails to overcome the presumption of effectiveness attached to an attorney's performance and fails to show that counsel's alleged errors would have changed the outcome of the trial.  See Strickland, 466 U.S. at 689.  This is particularly so because he has offered only conclusory and speculative arguments.  See Castellano v. United States, 795 F. Supp. 2d 272, 282 (S.D.N.Y. 2011) (citing Matura v. United States, 875 F. Supp. 235, 237-38 (S.D.N.Y. 1995) (rejecting bald assertion of counsel's

---

[9] This Court notes that it previously denied similar claims involving witnesses from St. Albert's church on similar grounds.   See Gent, 2012 WL 1899159, at *17 (rejecting ineffective-assistance-of-counsel argument, in part, because "[n]either the record nor the motion papers provide any indication apart from Lagona's current speculation that the testimony of these witnesses would have been exculpatory").

[10] As to Lagona's complaint that trial counsel stipulated to the Athens bank record over his objection, the Second Circuit has noted that "defense counsel may waive [certain rights] on behalf of defendant because they concern strategic and tactical matters such as selective introduction of evidence, *stipulations*, objections, and pre-trial motions."   United States v. Plitman, 194 F.3d 59, 63 (2d Cir. 1999) (emphasis added).

deficiency as too conclusory to overcome the <u>Strickland</u> presumption that counsel acted reasonably)).

### b. Trial counsel's failure to file a motion in limine concerning religion does not constitute ineffective assistance of counsel.

Lagona claims that trial counsel was ineffective because he did not move to preclude evidence of his religion or religious practices. (Docket No. 302, ¶¶ 15-16.) Lagona claims that he directed trial counsel to move against this evidence on relevancy grounds, but trial counsel told him that such a motion was not available and could not be brought. (<u>Id.</u> at ¶ 15.) Lagona claims prejudice because his religion and religious practices were raised during jury selection and several members of the venire commented on this subject during the selection process. (<u>Id.</u>)

This Court already addressed and rejected these arguments in its ruling on Lagona's post-trial motion, which need not be repeated here. <u>See Gent</u>, 2012 WL 1899159, at *11-14. As fully explained therein, trial counsel's handling of the religion issues—which included references to Lagona's activities as a psychic-medium—was not unreasonable or prejudicial. <u>See id.</u> at *13. Based on that decision, which is fully incorporated herein, this Court finds that Lagona fails to demonstrate that trial counsel's performance on this point was ineffective.

### c. Trial counsel's failure to investigate Guy Gane's background does not constitute ineffective assistance of counsel.

Lagona asserts that trial counsel failed to investigate Guy Gane's background, and thus failed to discover that Guy Gane had previously been involved in a similar criminal scheme. (Docket No. 302, ¶¶ 24-30.) Lagona argues that Gane's previous involvement in a similar scheme, which Lagona discovered after trial, "should have been discovered,

disclosed, and brought to the attention of the Court and the jury" and that "[d]oing so would have shown the Defendant Gane in a far different light to the jury and the Court, and Defendant Gane's character and *bona fides* would have been called into question." (Id. at ¶ 28.)

As above, this Court has already addressed and rejected this argument in its ruling on Lagona's post-trial motion. See Gent, 2012 WL 1899159, at *10. Therein, it found that evidence of Gane's prior involvement in a similar scheme would not have been favorable to Lagona: "there was sufficient evidence to support the jury's conclusion that Lagona had knowledge of and actively participated in the present scheme with Gane . . . Evidence that Gane had participated in a prior fraudulent scheme would have therefore undermined that part of Gane's testimony arguably favorable to Lagona: Gane's assertion that he never initially intended to defraud clients." Gent, 2012 WL 1899159, at *10. Consequently, trial counsel's alleged failure to pursue this evidence does not constitute ineffective assistance of counsel.

### d. Trial counsel's failure to investigate or secure documents related to Lagona's daughter's hospitalization does not constitute ineffective assistance of counsel.

Lagona maintains that trial counsel failed to investigate or secure documents related to his daughter's hospitalization, which, according to Lagona, may have shown that Lagona could not have been at a certain meeting that Guy Gane testified about. (Docket No. 302, ¶¶ 31-33.) Gane testified that during March 2007, he met with Lagona and co-defendant Ian Gent and admitted to them that he had stolen his clients' money and wanted to surrender himself to law enforcement. (Id. at ¶ 31.) He further testified

that Lagona and Gent strenuously objected to his plan to turn himself in.[11] (Id.) Lagona recounts that Gane "could not remember the day, date or time of the alleged meeting, and could offer no minutes, notations, records, or calendar entries concerning the alleged meeting." (Id.) Lagona claims that such a meeting was "highly unlikely, if not impossible" because during that time he was tending to his daughter, who had been hospitalized. (Id. at ¶ 32.) Lagona therefore maintains that counsel's failure to obtain the hospital records, which Lagona presumably believes would prove something akin to an alibi, demonstrated ineffectiveness. (Id. at ¶ 33.)

Lagona's argument here is entirely speculative. He asserts that the hospital records may have demonstrated that the meeting Gane referenced would have been "highly unlikely, if not impossible" given his daughter's hospitalization. The trouble with this assertion, however, is that Gane never provided a date certain for this meeting with Lagona and Gent, and Lagona concedes that he did in fact continue to go to the office during the relevant time period, albeit on a reduced basis. See Gent, 2012 WL 1899159, at *5 (noting that Gane testified that this meeting occurred "middle of March, I believe, of 2007"); Docket No. 302, ¶ 32 ("[Lagona] was hardly ever in the office due to a severe health problem his daughter had suffered . . . .). This significantly reduces the import of the hospital-record evidence. In any event, Lagona fails to show that the introduction of this evidence would have changed the outcome of the trial, for as previously noted, the evidence of Lagona's knowledge of and involvement in the scheme was overwhelming. See Gent, 2012 WL 1899159, at *4-9.

---

[11] This evidence is also discussed in this Court's previous decision denying Lagona's post-trial motion. See Gent, 2012 WL 1899159, at *5.

**e. There is no merit to Lagona's claim that trial counsel failed to convey the government's plea offer to him.**

Lagona claims that trial counsel failed to convey the government's plea offer to him. (Docket No. 302, ¶¶ 34-38.) He insists that trial counsel "consistently advised [him] that there was no specific offer by the Government, but that [he] could plead guilty and face up to twenty (20) years for each charge." (Id. at ¶ 34.) Lagona claims that after trial, he learned that the government had tendered a plea offer that, upon information and belief, would have resulted in a sentence of one year of home confinement, which he would have accepted. (Id. at ¶¶ 35, 37.)

The notion that trial counsel failed to discuss the government's plea offer with Lagona is proven false by the record. Counsel appeared before this Court on December 20, 2010, at which time the following exchange took place:

> Court: And we took the plea from defendant Guy Gane on December 9th, and we gave you a little time, Mr. Molloy,[12] Mr. Liebers, really to find out from your clients whether we're going to proceed to trial on February 8th.
>
> Mr. Molloy, you want to let me know where we are at this point?
>
> Mr. Molloy: I spoke with Miss Wylegala[13] on Friday, had a conversation with my client over the weekend regarding what Miss Wylegala and I talked about, we are giving it serious consideration. I told Miss Wylegala I will be in touch with her on January the 1st to let her know. But right now I would say it's more likely we're going to trial than not.
>
> . . .

---

[12] Mr. Molloy was Lagona's trial counsel.

[13] Ms. Wylegala was the prosecutor.

> Ms. Wylegala: That would make sense, Judge. I still continue to believe this is a case that should plea, but apparently it may not. But I think to give a little bit more time to the defense to consider its position . . . .

(Docket No. 254, pp. 2-3.)

After this Court granted additional time for the remaining defendants to consider their trial positions, <u>see</u> Docket No. 37, the parties and counsel appeared before this Court again on January 11, 2011 (about one month before trial), at which time the following exchange occurred:

> Court:       All right. Gentlemen, we've got to figure out, you know, whether or not I issue that expedited trial order. From the looks of things, it looks like this case is going forward, is that right, Miss Wylegala?
>
> Ms. Wylegala: That's how it appears, your Honor. I have had discussions with both Mr. Liebers and with Mr. Molloy, and it's my understanding that the defendants do not wish to pursue discussing a plea. They want to go to trial.

(Docket No. 247, p. 2.)

Based on these colloquies, it is apparent that trial counsel and the government discussed a plea resolution, that trial counsel discussed that possible resolution with Lagona, and that Lagona rejected it. Lagona was present at the January 11, 2011 status conference and never raised any objection to the government's representation that he and his co-defendant were not interested in further pursuing a plea. Lagona's self-serving claim otherwise is simply not supported by the record. As such, there is no basis for a finding of ineffective assistance of counsel.

***

17

Lagona's ineffective-assistance-of-counsel claims challenge the very type of decisions that a court is ill-suited to second-guess. See Taylor v. Illinois, 484 U.S. 400, 417-18, 108 S. Ct. 646, 98 L. Ed. 2d 798 (1988) (attorney has authority to manage most aspects of the defense without obtaining his client's approval); see also Sheehan v. United States, 16-CV-6385, 2018 WL 1796548, at *2 (E.D.N.Y. Apr. 16, 2018) ("Second guessing the tactical and strategic choices made by counsel is seldom appropriate."). They are the types of claims the Strickland court warned about: "It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." 466 U.S. at 689 ("Judicial scrutiny of counsel's performance must be highly deferential."). Lagona therefore fails to establish that counsel's trial decisions fell below "an objective standard of reasonableness" under "prevailing professional norms" such that they were "outside the wide range of professionally competent assistance." See Strickland, 466 U.S. at 688, 690. He also fails to show that but for these decisions, the results of his trial would likely have been different. Id. at 687, 694. This ground for relief is therefore denied.

**2. Lagona's sufficiency-of-the-evidence claim is barred by the mandate rule.**

In his second ground for relief, Lagona claims that his "state of mind at the time of the alleged crimes and during the trial is in question." (Docket No. 302, ¶ 64.) In support of this contention, Lagona incorporates and relies on his recently-denied motion for a new trial based on new evidence. See United States v. Lagona, 10-CR-90S, 2018 WL 2184516 (W.D.N.Y. May 11, 2018). The new evidence involves Lagona's claim that he was recently diagnosed with severe anxiety and depression and post-traumatic stress

disorter:

> The newly discovered evidence relates to a discussion that Lagona allegedly had with a counselor while he was detained at the Buffalo Federal Detention Facility. (Affirmation of James F. Lagona ("Lagona Aff."), Docket No. 259-1, ¶ 14.) According to Lagona, this counselor—Gena Ligonde— advised him that he was "suffering from severe anxiety and depression, as well as post-traumatic stress disorder." (Id.) Ligonde allegedly traced these conditions to Lagona's wife's troubled pregnancy, the premature birth of his daughter (some 27 years ago), and the constant stress of caring for his disabled wife and handicapped daughter. (Id.)

> Lagona further claims that Ligonde told him that he "subconsciously developed two separate coping mechanisms over the years, disassociation and compartmentalization." (Id. at ¶ 16.) These two coping mechanisms allegedly caused Lagona "to distance himself from anything that would distract [him] from caring for [his] disabled wife and handicapped daughter, and to subconsciously push those matters aside so that [he] could function on a daily basis." (Id.)

> The import of this evidence, according to Lagona, is that it explains why he "had no awareness" of co-defendant Guy Gane's illegal conduct in the mail fraud case. (Id. at ¶ 17.) Lagona also claims that these newly discovered conditions, along with the trial and verdict in the mail fraud case and the subsequent suicide of a close friend, "led to the obstruction matter," in the sense that "it all became far too much for [him]." (Id. at ¶ 18.) Lagona claims that Ligonde told him that his newly discovered conditions "clearly explained [his] actions and behaviors in both matters." (Id. at ¶ 19.)

Lagona, 2018 WL 2184516, at *1-2.

This Court denied Lagona's motion for a new trial based on this new evidence. In doing so, it explained that "[e]ven assuming that Ligonde's 'diagnosis' constitutes new admissible and material evidence that Lagona could not have diligently discovered, it [was] not of the sort that would change the verdict." Lagona, 2018 WL 2184516, at *3. This is because the trial evidence of Lagona's awareness of and participation in the

scheme to defraud was overwhelming.  See id. at *3-4 (setting forth the overwhelming evidence).

And contrary to Lagona's assertion that he "had no awareness" of illegal conduct, the Second Circuit found that the trial evidence was sufficient to support the conclusion that Lagona acted with intent to defraud and knew of the illegal scheme.  Gane, 592 Fed. App'x at *6.  Specifically, it found that

> Lagona actively prepared new debentures even after becoming aware that payments to investors of previously issued debentures were due and could not be paid, as promised, with profit; attended at least one sales meeting in which he participated in procuring an investment based on false representations; signed letters assuring investors that their non-existent investments were safe; and did these things at times when he was aware that no investments and no income were being generated.

Gane, 592 F. App'x at *6.

Consequently, given this Court's finding that the new evidence would have been inconsequential, and given the Second Circuit's finding that the evidence of Lagona's intent to defraud and participation in the illegal scheme was sufficient, the mandate rule acts to bar Lagona's argument that he lacked the requisite "state of mind" at the time of the offense.  The Second Circuit found that the trial evidence was sufficient to support Lagona's convictions, and it otherwise found no error in the trial proceedings.  The mandate rule therefore bars Lagona from now re-litigating the sufficiency of the trial evidence: it is well established that a § 2255 motion cannot be used to re-litigate issues previously raised and resolved on direct appeal.  See Yick Man Mui, 614 F.3d at 53 ("a Section 2255 petitioner may not relitigate questions which were raised and considered on direct appeal") (citation and internal quotation marks omitted)).  This ground for relief is

therefore denied.

### 3. No evidentiary hearing is required.

In his § 2255 motion, Lagona requests the opportunity to advance his claims at an evidentiary hearing. As indicated above, § 2255 provides that a court shall hold an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." Rule 4 (b) also provides that "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion . . . ."

Here, no evidentiary hearing is required because Lagona's motion and the record conclusively demonstrate that Lagona is entitled to no relief under § 2255. Consequently, this Court finds that no hearing is warranted or required. See Orbach v. United States, 11 Cr. 111 (NRB), 2017 WL 5632815, at *7 (S.D.N.Y. Nov. 7, 2017) (denying request for a § 2255 hearing where "[t]he existing record is conclusive that petitioner is not entitled to relief on any theory presented to [the court]").

### 4. A certificate of appealability will not issue.

For a certificate of appealability to issue, a petitioner must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253 (c)(2). To make the required "substantial showing," Lagona must establish that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Rhagi v. Artuz, 309 F.3d 103, 106 (2d Cir. 2002) (per curiam) (citations and internal quotation marks omitted). Lagona has made no such substantial showing of the denial of a constitutional right in this case. A certificate of appealability will therefore not be

issued.

## IV. CONCLUSION

Having considered Lagona's grounds for relief individually and cumulatively, and having presided over the trial of this matter, with opportunity to observe trial counsel first-hand, this Court finds that Lagona has failed to carry his burden of showing "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed [to him] by the Sixth Amendment" or to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Harrington, 562 U.S. at 104 (quotations and citations omitted). Lagona's § 2255 motion must therefore be denied.[14]

If Lagona wishes to appeal, he must file a Notice of Appeal with the Clerk's Office, United States District Court, Western District of New York, within 30 days of the date of judgment in this action. Requests to proceed on appeal as a poor person, if any, must be filed with the United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

## V. ORDERS

IT HEREBY IS ORDERED, that Petitioner's Motion to Vacate, Set Aside or Correct his Sentence and Conviction under 28 U.S.C. § 2255 (Docket No. 302) is DENIED.

FURTHER, that this Court hereby certifies, pursuant to 28 U.S.C. § 1915 (a)(3) and Rule 24 (a)(3) of the Federal Rules of Appellate Procedure, that any appeal from this Decision and Order would not be taken in good faith and therefore leave to appeal as a

---

[14] Because Lagona's § 2255 motion is denied, there is no basis to appoint him counsel, to order his immediate release, to vacate the jury's verdict, or to re-sentence him. These dependent requests are therefore also denied.

poor person is DENIED.  See Coppedge v. United States, 369 U.S. 438, 82 S. Ct. 917, 8 L. Ed. 2d 21 (1962).

FURTHER, that a Certificate of Appealability under 28 U.S.C. § 2253 is DENIED.

FURTHER, that the Clerk of Court is directed to CLOSE 16-CV-427S.

SO ORDERED.


Dated:      June 27, 2018
            Buffalo, New York

                                        /s/William M.  Skretny
                                         WILLIAM M. SKRETNY
                                        United States District Judge